Joshua D. Kienitz, Bar No. 244903
jkienitz@littler.com
LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Fax No.: 925.946.9809

Philip B. Baldwin, Bar No. 307920
pbaldwin@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, California 94104
Telephone: 415.433.1940
Fax No.: 415.399.8490

Attorneys for Defendant
WONOLO INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BOGLE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WONOLO INC.,<br><br>Defendant. | Case No. 2:21-cv-08878 MCS(KSx)<br><br>**DECLARATION OF AURELIO J. PÉREZ IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO (I) DISMISS THE COMPLAINT, OR ALTERNATIVELY, (II) STRIKE PLAINTIFF'S COLLECTIVE ALLEGATIONS AND STAY PROCEEDINGS PENDING ARBITRATION**<br><br>Date: February 14, 2022<br>Time: 9:00 a.m.<br>Courtroom: 7C, 7th Floor<br>Judge: Hon. Mark C. Scarsi<br><br>Complaint Filed: November 10, 2021<br>Trial Date: None Set |

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DECLARATION OF AURELIO J.
PÉREZ

2:21-CV-08878 MCS(KSX)

## DECLARATION OF AURELIO J. PÉREZ

I, AURELIO J. PÉREZ, declare as follows:

1.      Except as otherwise stated below, I have knowledge of all of the facts stated in this Declaration through my personal knowledge and/or by virtue of my access to Wonolo Inc.'s ("Wonolo") business records, to which I have access in the normal course of my day-to-day role as Wonolo's "VP of Legal."  If called as a witness, I could and would competently testify to all of the statements below.

2.      I have been employed by Wonolo, and have overseen its legal department, since January 2019.  In my role, I am familiar with Wonolo's business operations and legal matters, and I have access to Wonolo's business records, including records reflecting Wonoloers' (defined below) and third-party businesses' use of Wonolo's technology platform.

3.      By way of background, Wonolo is a software company that has created and maintains an online marketplace for jobs – i.e., a platform through which third-party businesses seeking workers ("customers") can connect with individuals seeking short-term jobs ("Wonoloers").  Wonoloers with access to the marketplace can use the Wonolo smartphone application to search for, review, and select among job requests posted by customers.  Wonolo has physical offices in Nashville, Tennessee and San Francisco, California and the Wonolo marketplace is available to customers and Wonoloers in more than twenty states and in most metropolitan areas in the United States.

4.      In my role as VP of Legal, I have access to Wonolo's business records reflecting the different versions of Wonolo's Terms of Use ("TOU"), which govern Wonoloers' use of the Wonolo platform, that have been in effect over time. These records are maintained in the regular course of Wonolo's business and are records of regularly conducted activity.  Attached hereto as **Exhibit A** is a true and correct copy of the Wonolo TOU that was in effect on June 20, 2018.  This version of the TOU was the operative TOU from January 29, 2018 through September 24, 2018 (at which time

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DECLARATION OF AURELIO J. PÉREZ                    2                    2:21-CV-08878 MCS(KSX)

1   a new version of the TOU was rolled out).

2       5.      On June 23, 2021, Plaintiff Christopher Bogle sent Wonolo a letter titled

3   "NOTICE OF INITIATION OF ARBITRATION."   A true and correct copy of

4   Plaintiff's Notice of Initiation of Arbitration and accompanying arbitration demand is

5   attached hereto as **Exhibit B**. Therein, Plaintiff alleged that he was an employee of

6   Wonolo and that Wonolo had violated his rights under various provisions of the

7   California Labor Code.   Plaintiff requested arbitration of the dispute based on an

8   agreement he had entered into with Wonolo.  (*See* **Exhibit B**, pg. 8:18-20 ("WONOLO

9   hired Mr. Bogle and entered into a written employment agreement with him, which

10  among other terms and provisions, included an arbitration agreement pursuant to which

11  Mr. Bogle brings this demand.").)  The parties later agreed to engage in pre-arbitration

12  settlement discussions with respect to Plaintiff's claims under the California Labor

13  Code.

14      6.      During a December 17, 2021 teleconference between Plaintiff's counsel

15  and Wonolo, Plaintiff's counsel indicated that Plaintiff had decided to stay settlement

16  discussions related to Plaintiff's arbitration demand until Plaintiff had greater clarity on

17  the status of the above-captioned lawsuit, including with respect to whether Plaintiff

18  would be able to pursue his claim under the Fair Labor Standards Act ("FLSA") in court

19  on a collective basis.

20      7.      During that same teleconference, Wonolo explained that Plaintiff's claims

21  under the FLSA arising from his alleged misclassification are subject to the same

22  arbitration agreement as Plaintiff's claims under the California Labor Code based on

23  his alleged misclassification.  Specifically, I noted that Plaintiff is obligated to submit

24  his claims under the FLSA to individual arbitration, and that Wonolo would bring a

25  motion to compel Plaintiff to individually arbitrate his dispute if Plaintiff did not

26  voluntarily agree to do so.  To date, Plaintiff has refused to submit his claims in this

27  lawsuit to individual arbitration, thereby necessitating Wonolo's motion to compel

28  individual arbitration.

DECLARATION OF AURELIO J. PÉREZ

3

8.      In addition to Plaintiff's arbitration demand (pursuant to which Plaintiff asserts various wage and hour claims under the California Labor Code) and the instant lawsuit (pursuant to which Plaintiff seeks allegedly unpaid overtime under the FLSA), Plaintiff also filed a statewide action against Wonolo under California's Private Attorneys General Act ("PAGA") on May 26, 2020.  Like his arbitration demand and his FLSA suit (the case at bar), Plaintiff's PAGA action asserts that Wonolo misclassified Mr. Bogle as an independent contractor and, consequently, violated his rights under employment laws.  A true and correct copy of Plaintiff's complaint for civil penalties under California Private Attorneys General Act is attached hereto as **Exhibit C.**

I declare under penalty of perjury under the laws of the United States and California that the foregoing is true and correct.

Executed on January $\underline{5}$, 2022 at Nashville, Tennessee.

AURELIO J. PÉREZ

4867-8468-8392.1 / 085958-1040

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DECLARATION OF AURELIO J. PÉREZ                    4                    2:21-CV-08878 MCS(KSX)

# EXHIBIT A

# TERMS OF USE

# INDEPENDENT CONTRACTOR SERVICES AGREEMENT

Updated: January 29, 2018
Section 3.4, 6.3

Wonolo Mobile Application is an internet application ("Wonolo Mobile Application" or the "Application") owned and operated by Wonolo ("Wonolo," "we," or "us"). Wonolo provides a service (the "Service") that allows its customers ("Customers") to access Wonolo's network of contractors ("Wonoloers" or "you" or "Contractor") to identify local providers to meet intermittent needs for services. The Wonoloers have access to the Application to receive and review requests for services from Customers and to determine their interest in and availability to respond to such requests.

**PLEASE READ THIS AGREEMENT CAREFULLY. THIS AGREEMENT CONTAINS A MANDATORY INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER PROVISION THAT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE COVERED DISPUTES, RATHER THAN JUDGE OR JURY TRIALS.**

**Acknowledgment and Acceptance of Independent Contractor Services Agreement**

This Terms of Use Independent Contractor Services Agreement ("Terms of Use" or "Agreement") is an electronic contract that sets out the legally binding terms of the relationship between Wonolo and you. By registering to become a Wonoloer, you accept and agree to be bound by the terms of this Agreement. Please read it carefully. By accessing the Application, or becoming a Wonoloer, you accept this Agreement and agree to the terms, conditions and notices contained and/or referenced herein.

Wonolo reserves the right to change this Agreement, and add additional terms at any time, effective upon making the modified provisions available on the Application or by notifying Wonoloers directly. You are responsible for regularly reviewing the Terms of Use for modifications and updates to its terms. Continued use of the Application after any such changes are made to this Agreement shall constitute your consent to such changes. Other than making the changes available on the Application, Wonolo does not assume any obligation to notify Wonoloers of any changes to this Agreement, or the creation or modification of any additional terms.

**Notwithstanding the previous paragraph or any contrary language in this Agreement, the Arbitration Agreement in Section 9 of this Agreement may not be**

**modified or terminated absent a writing signed (electronically or otherwise) by the Company and You.**

You acknowledge that you are able to electronically receive, download, and print this Agreement, any other terms, notices, forms (including IRS Form 1099-MISC) and any other documents required by, or incorporated into, this Agreement by reference, any amendments to this Agreement, or any other items required by regulation or law. Further, you agree to keep the contact information in your Account current at all times including, but not limited to, your email address, physical address, and phone number.

Use of the Application is permitted only by individuals who can form legally binding contracts under applicable law. Without limiting the foregoing, you must be at least 18 years old [or the age of legal majority in the jurisdiction in which you work and legally authorized to work in the United States to become a Wonoloer. If you do not meet these criteria, you may not register to become a Wonoloer.

## 1.  DEFINITIONS

Capitalized terms are defined as set forth below or elsewhere in the Agreement.

**1.1  "Services"** means the services described in a Wonolo Request for services by a Wonoloer to a Wonolo Customer.

**1.2  "Wonolo Request**" means a notice provided, through the Application, to one or more Wonoloers, which includes a description of the services to be provided by the Wonoloers, the time by which the Wonolo Request must be completed (the "Wonolo Completion Date") and the fee associated with the Wonolo Request (the "Payment"). An open request is a request for services that has not yet been accepted by a Wonoloer ("Open Request"). Wonoloers can use the Application to review Open Requests and to indicate their availability for Open Requests.  Once a Wonoloer has accepted a Wonolo Request pursuant to Section 2, the Wonolo Request will become a "Wonolo Engagement".  (Wonoloers are under no obligation to accept any Open Request).

**1.3** "**Wonolo Mobile Application**" or **"Application"** means the software application used by Wonolo in connection with the Services.

## 2.  WONOLOERS

**2.1 Background Checks and Privacy Information.** As part of your initial registration with Wonolo, you agree to immediately execute a written consent for a background check. Subject to a satisfactory background check and agreement to the terms herein, you will be eligible to use the Wonolo Mobile Application to view and accept Wonolo Requests. You further agree to complete any ongoing background checks as may be required by Wonolo or a Customer. Failure to complete the initial or ongoing background check processes may result in inability to accept Wonolo Requests and/or

removal from the Wonolo Platform. Please note that in order to run your background check, Wonolo will ask for your social security number during the onboarding process. We may also share your social security number with our payment vendor, Stripe, in order to verify your payment account to ensure the safety of your account.

**2.2 Best Efforts.** By registering to become a Wonoloer and accepting an Open Request, you agree to use your best efforts to perform the Wonolo Engagement such that the Services meet the requirements and specifications of the Customer, for whom the Open Request was created. Once a Wonoloer has accepted a Wonolo Request, the Open Request will no longer be available for performance by other Wonoloers who received the Open Request. By accepting an Open Request, you are entering into a binding legal agreement to provide the Services for the Payment specified in the Open Request. Do not accept an Open Request unless you are sure that:  (1) you understand what you are being asked to deliver; (2) you can perform the Services identified in the Open Request; (3) you can deliver the Services in the requested time period; and if required, you can get to and from the Customer's location.  Failure to timely deliver the Services consistent with the Customer's requirements and specifications will constitute a breach, resulting in non-payment.  Further, in the event of such a breach, you will be responsible for payment of any additional fees (e.g., rush fees) or costs incurred as a result of your failure to timely complete the Open Request in accordance with the Customer requirements.

## 3.  INDEPENDENT CONTRACTOR RELATIONSHIP

Nothing in this Agreement is intended or should be construed to create a partnership, joint venture, or employer-employee relationship between Wonolo and you or between the Customer and you. You will take no position with respect to or on any tax return or application for benefits, or in any proceeding directly or indirectly involving Wonolo that is inconsistent with your being an independent contractor (and not an employee) of Wonolo.  You are not the agent of Wonolo or the Customer and you are not authorized, and must not represent to any third party that you are authorized, to make any commitment or otherwise act on behalf of Wonolo or the Customer.

As an independent contractor, you are solely responsible for determining which Open Requests you will choose to accept and how, when and where you will provide the Services under this Agreement.  Wonolo will provide no supervision and will have no control over the manner in which you perform the Services.  Further, you must provide all equipment, tools, material and labor that may be necessary to perform the Services.  You acknowledge and understand that Wonolo will not provide you with any equipment, tools, material or labor to perform the Services and will only (subject to the terms and condition stated herein) provide you with access to the Application for purposes of enabling you to access and accept (if you so choose) Wonolo Requests and engage in incidental, related activities (if you so choose).

Nothing in this Agreement is intended to prohibit or discourage (nor should be construed as prohibiting or discouraging) you from engaging in other business activities or

providing your services to others that are separate and distinct from any business activities or services that you conduct through the Application.

Without limiting the generality of the foregoing:

**3.1  Benefits and Contributions.** You are not entitled to or eligible for any benefits that Wonolo, its parents, subsidiaries, affiliates or other related entities may make available to its employees, such as group insurance, profit-sharing or retirement benefits. Because you are an independent contractor, Wonolo will not withhold or make payments for social security, make unemployment insurance or disability insurance contributions, or obtain workers' compensation insurance on your behalf. If, notwithstanding the foregoing, you are reclassified as an employee of Wonolo, or any affiliate of Wonolo ("Affiliate"), by the U.S. Internal Revenue Service ("IRS"), the U.S. Department of Labor ("DOL"), or any other federal, state or foreign court or agency, you agree that you will not, as the result of such reclassification, be entitled to or eligible for, on either a prospective or retrospective basis, any employee benefits under any plans or programs established or maintained by either the Customer and its parents, subsidiaries, affiliates or related entities or by Wonolo, its parents, subsidiaries, affiliates or other related entities.

**3.2  Taxes.** You are solely responsible for filing all tax returns and submitting all payments as required by any federal, state, local, or foreign tax authority arising from the payment of Payments to you under this Agreement, and you agree to do so in a timely manner. You will comply with all applicable federal, state, local, and foreign laws governing self-employed individuals, including laws requiring the payment of taxes, such as income and employment taxes, and social security, disability and other contributions.  To the extent required by the IRS, Wonolo will report the Payments paid to you for services rendered as part of Wonolo engagements by filing Form 1099-MISC with IRS. You consent to electronic delivery of Form 1099-MISC, if such form is required or filed. You agree to indemnify Wonolo for the cost of any tax liabilities incurred by Wonolo as a result of your failure to pay all applicable taxes in a timely manner.

**3.3  Third Party Payment Processing Services.** Payment processing services for Wonoloers are provided by Stripe and are subject to the Stripe Connected Account Agreement, which includes the Stripe Terms of Service(collectively, the "Stripe Services Agreement"). By agreeing to these terms or continuing to operate as a Wonoloer on Wonoloer, you agree to be bound by the Stripe Services Agreement, as the same may be modified by Stripe from time to time. As a condition of Wonolo enabling payment processing services through Stripe, you agree to provide Wonolo accurate and complete information about you and your business, and you authorize Wonolo to share it and transaction information related to your use of the payment processing services provided by Stripe.

**3.4  On-Demand Independent Contractors Association Membership Enrollment.** By agreeing to this Membership Enrollment Application, I understand I am

agreeing to enroll in the On-Demand Independent Contractors Association (ODICA) and I am also agreeing to abide by the Bylaws of ODICA, as amended from time to time.

Membership in ODICA is non-transferable and only one membership in ODICA is allowed per eligible person. A member may cancel his or her membership within thirty (30) days from the date you join ODICA, by sending a cancellation letter with your name and membership number to Member Services. ODICA bylaws are available upon request. Nothing herein creates the relationship of employer-employee between member and ODICA. Members of ODICA have access to certain benefits and/or products offered by ODICA, or sponsored by ODICA, Benefits and/or products are offered at the sole discretion of ODICA, and may vary by availability, vendor or the member's state of residence. ODICA may change vendors or immediately terminate the benefits and/or products offered without prior notice to members. Termination of membership in ODICA will result in the loss of such benefits and/or products. By signing this form you authorize ODICA to share your information with such third-party vendors on an as needed basis only.

Non-Voting Membership: By signing this form, I understand that I am enrolling as a non-dues-paying member of ODICA with no voting rights. I hereby state that I certify to the best of my knowledge and belief that all information on this form is complete and truthful and I am 18 years of age or older. Membership in ODICA is effective the first day of the month in which the member enrolls.

## 4. CONFIDENTIALITY

**4.1  Use and Disclosure.** From time to time, you may be given access to confidential information in the course of performing engagements that you receive through Wonolo. During the term of this Agreement and at all times thereafter, you will (a) hold all Confidential Information in strict trust and confidence, (b) refrain from using or permitting others to use Confidential Information in any manner or for any purpose not expressly permitted or required by this Agreement, and (c) refrain from disclosing or permitting others to disclose any Confidential Information to any third party without obtaining Wonolo's express prior written consent on a case-by-case basis. "Confidential Information" means any and all information related to Wonolo's or any Customer's business (including trade secrets, technical information, business forecasts and strategies, marketing plans, customer and supplier lists, personnel information, financial data, and proprietary information of third parties including Customers) that Wonolo and/or the Customer considers to be confidential or proprietary or which Wonolo has a duty to treat as confidential.

**4.2  Standard of Care.** You will protect the Confidential Information from unauthorized use, access, or disclosure in the same manner as you protect your own confidential or proprietary information of a similar nature, and with no less than reasonable care.

**4.3  Exceptions.** Your obligations under Sections 4.1 and 4.2 will terminate with respect to any particular information that you can prove, by clear and convincing evidence, (a)

you lawfully knew prior to Wonolo's first disclosure to you, (b) a third party rightfully disclosed to you free of any confidentiality duties or obligations, or (c) is, or through no fault of you has become, generally available to the public. Additionally, you will be permitted to disclose Confidential Information to the extent that such disclosure is expressly approved in writing by Wonolo, or is required by law or court order, provided that you immediately notify Wonolo in writing of such required disclosure and cooperate with Wonolo, at Wonolo's reasonable request and expense, in any lawful action to contest or limit the scope of such required disclosure, including filing motions and otherwise making appearances before a court.

**4.4  Removal; Return.** Upon Wonolo's request and upon any termination or expiration of this Agreement, you will promptly (a) return to Wonolo or, if so directed by Wonolo, destroy all Confidential Information (in every form and medium), (b) permanently erase all electronic files containing or summarizing any Confidential Information, and (c) certify to Wonolo in writing that you have fully complied with these obligations.

## 5.  NO CONFLICTS

You represent and warrant that you are not subject to any contract or duty that would be breached by entering into or performing your obligations under this Agreement, or any Wonolo Engagement, or that is otherwise inconsistent with this Agreement or any Wonolo Engagement.

## 6.  REPRESENTATIONS AND WARRANTIES

**6.1  General.** You represent, warrant, and covenant that:

(a)  You have full right, power, and authority to enter into and perform under this Agreement without the consent of any third party (including any of your current or former employers);

(b)  You will comply with all of the terms of this Agreement;

(c)  You will fully conform to the Customer specifications, requirements, and other terms of any Wonolo Request that you accept, and the Services delivered will be of a professional and workmanlike quality;

(d) You will comply with all applicable laws, rules and regulations in connection with performance of the Services under this Agreement;

(e) Any workers that you may employ, engage or otherwise retain to assist with performance of Services under this Agreement are properly classified and treated under any applicable laws and will assist with the performance of Services in a safe, lawful and workmanlike manner.

**6.2.  Indemnification.**  You will indemnify and hold harmless Wonolo and its parents, affiliates, employees, and agents from and against any and all liabilities, losses, damages, costs, and other expenses (including attorney fees and costs associated with litigation) arising from or relating to a breach by you of any representation, warranty, covenant, or obligation in this Agreement, or arising from or relating to any negligent or intentional act or omission committed by you, in connection with the performance of any Wonolo engagement, which act or omission gives rise to any claim for damages against you, Wonolo and/or its parents, affiliates, employees or agents.  Wonolo specifically denies any obligation to defend and/or indemnify you from and against any third party claims made against you arising from any negligent or intentional act or omission committed by you in connection with the performance of any Wonolo engagement.

**6.3  Insurance.**  You acknowledge that you are an independent contractor, not an employee of Wonolo.  As such, you acknowledge and understand that you are not covered by any insurance that may be provided by Wonolo to its employees, including, without limitation, health insurance, workers compensation insurance, general liability insurance, and automobile liability insurance.  Wonolo requires that, as an independent contractor, you maintain workers' compensation or occupational accident insurance for which you are solely and exclusively responsible for.  Specifically, in the event that you are injured while working in the course and scope of an engagement for Wonolo, you acknowledge and understand that you will not be covered by any workers compensation insurance coverage that Wonolo may provide to its employees.  Further, in the event that your actions cause an injury to a third party while you are working in the course and scope of performing a Wonolo Engagement or the Services, you acknowledge and understand that you will not be covered by any general liability or automobile liability insurance coverage that Wonolo may have, and that Wonolo is not making any commitment to defend and/or indemnify you in such circumstances, and specifically denies such obligation.  **If you do not provide proof of workers' compensation or occupational accident insurance, you will be charged a Trust and Safety Fee that will be paid towards Wonolo's supplemental occupational accident insurance**. By agreeing to these Terms, you are agreeing to pay this fee.

**6.4  Warranty Disclaimer.**  The Application is provided "as is," as available and without any warranties or conditions (express or implied, including the implied warranties of merchantability, accuracy, fitness for a particular purpose, title and non-infringement, arising by statute or otherwise in law or from a course of dealing or usage or trade). We disclaim all and make no representations or warranties, of any kind, either express or implied, as to the quality, identity or reliability of any third party, or as to the accuracy of the postings made on the Application by any third party. Some states and jurisdictions do not allow for all the foregoing limitations on implied warranties, so to that extent, if any, some or all of the above limitations may not apply to you.

# 7.  LIMITATION OF LIABILITY

IN NO EVENT WILL WONOLO BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, EXEMPLARY, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES ARISING FROM OR

RELATING TO THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, LOSS OF BUSINESS OPPORTUNITIES OR LOSS OF GOODWILL, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. WONOLO'S TOTAL CUMULATIVE LIABILITY IN CONNECTION WITH THIS AGREEMENT, WHETHER IN CONTRACT OR TORT OR OTHERWISE, WILL NOT EXCEED THE AGGREGATE AMOUNT OF PAYMENTS OWED BY WONOLO FOR WONOLO ENGAGEMENTS PERFORMED UNDER THIS AGREEMENT DURING THE TWELVE-MONTH PERIOD PRIOR TO THE OCCURRENCE OF THE FIRST CLAIM TO GIVE RISE TO LIABILITY UNDER THIS AGREEMENT.

SOME STATES AND JURISDICTIONS DO NOT ALLOW FOR ALL OF THE FOREGOING EXCLUSIONS AND LIMITATIONS OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO TO THAT EXTENT, IF ANY, SOME OR ALL OF THESE LIMITATIONS AND EXCLUSIONS MAY NOT APPLY TO YOU.

## 8. TERMINATION

**8.1  Termination by Wonolo.**  Wonolo reserves the right to terminate your access to the Application if you have not accepted a Wonolo Engagement in the previous twelve calendar months, if you materially breach the Agreement or any Wonolo Engagement, if you violate the law in connection with your use of the Application (or in connection with the performance of the Services) or if you have otherwise engage in conduct in using the Application that Wonolo, in its sole discretion, believes in good faith to be detrimental to its business interests.

**8.2  Survival.**  Sections 3 ("Independent Contractor Relationship"), 4 ("Confidentiality"), 5 ("No Conflicts"), 6 ("Representations and Warranties"), 7 ("Limitation of Liability"), 8.2 ("Survival"), and 9 ("General Provisions") will survive any termination or expiration of this Agreement and/or any modification or termination of the Application. Termination or expiration of this Agreement will not affect either party's liability for any breach of this Agreement such party may have committed before such expiration or termination.

## 9. GENERAL PROVISIONS

**9.1  Law. Except for the "Mandatory Binding Individual Arbitration And Class Action Waiver" below, which is governed by the Federal Arbitration Act,** this Agreement or any claim, cause of action or dispute ("Claim") arising out of or related to this Agreement shall be governed by the laws of the state of in which the Wonoloer resides  regardless of your country of origin or where you access Wonolo, and notwithstanding any conflicts of law principles.

**9.2  Mandatory Binding Individual Arbitration and Class Action Waiver** ("Arbitration Agreement").  The Company and Contractor mutually agree to

resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court.  This Arbitration Agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) and, except as otherwise provided in this Arbitration Agreement, shall apply to any and all claims arising out of or relating to this Contract, the Contractor's classification as an independent contractor, Contractor's provision of services to the Company  or its Customers, the payments received by Contractor for providing services to the Company  or its Customers, the termination of this Contract, and all other aspects of the Contractor's relationship with the Company, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation harassment, discrimination or retaliation claims and claims arising under or related to the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, or Fair Labor Standards Act, state statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims arising out of or relating to Contractor's relationship or the termination of that relationship with the Company.   The agreement by Contractor and the Company to mutually arbitrate disputes provides consideration for this Arbitration Agreement.  This Arbitration Agreement applies to claims and disputes that the Company may have against Contractor and/or that Contractor may have against the Company, and (1) its affiliates and partners (2) its officers, directors, employees, or agents in their capacity as such or otherwise, and/or (3) all successors and assigns of any of them; any and all of which may enforce this Arbitration Agreement.

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or alleged waiver of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable.  However, as stated in the "Class Action Waiver" below, the preceding sentence shall not apply to the clause entitled "Class Action Waiver."

This Arbitration Agreement does not apply to any claim that may not be arbitrated as provided by an Act of Congress. This Arbitration Agreement also does not apply to Private Attorney General Action claims under California law, which may only be brought in a court of law—not in arbitration.

(a)      If either party wishes to initiate arbitration, the initiating party must notify the other party in writing via certified mail, return receipt requested, or hand delivery within the applicable statute of limitations period.  This demand for arbitration must include (1) the name and address of the party seeking arbitration, (2) a statement of the legal and factual basis of the claim, and (3) a description of the remedy sought.  Any demand for arbitration by Contractor must be delivered to Asher Brustein at support@wonolo.com.

**(b)      Class Action Waiver.  The Company and Contractor mutually agree that by entering into this Arbitration Agreement , both waive their right to have any dispute or claim brought, heard or arbitrated as a class action and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class**

**and/or collective action ("Class Action Waiver").  Notwithstanding any other clause contained in this Arbitration Agreement or the AAA Rules, as defined below, any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class and/or collective action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class or collective action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.**

(c)      Contractor agrees and acknowledges that entering into this Arbitration Agreement does not change Contractor's status as an independent contractor in fact and in law, that Contractor is not an employee of the Company or the Company's Customer and that any disputes in this regard shall be subject to arbitration as provided in this Arbitration Agreement.

(d)      Any arbitration shall be governed by the American Arbitration Association Commercial Arbitration Rules ("AAA Rules"), except as follows:

(1)      The arbitration shall be heard by one arbitrator selected in accordance with the AAA Rules.  The arbitrator shall be a licensed attorney or retired judge with experience in the law underlying the dispute.

(2)      If the parties cannot otherwise agree on a location for the arbitration, the arbitration shall take place in the county in which Contractor performed his contractual duties for The Company.

(3)      Unless applicable law provides otherwise, as determined by the Arbitrator, the parties agree that the Company shall pay all of the Arbitrator's fees and costs.

(4)      The Arbitrator may issue orders (including subpoenas to third parties) allowing the parties to conduct discovery sufficient to allow each party to prepare that party's claims and/or defenses, taking into consideration that arbitration is designed to be a speedy and efficient method for resolving disputes.

(5)      Except as provided in the Class Action Waiver, the Arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law, but shall not be empowered to award any remedies that would not have been available in a court of law for the claims presented in arbitration.  The Arbitrator shall apply the state or federal substantive law, or both, as is applicable.

(6)      The Arbitrator may hear motions to dismiss and/or motions for summary judgment and will apply the standards of the Federal Rules of Civil Procedure governing such motions.

(7)     The Arbitrator's decision or award shall be in writing with findings of fact and conclusions of law. The award issued by the Arbitrator may be entered in any court of competent jurisdiction.

(8)      Either the Company or Contractor may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief on the ground that without such relief the arbitration provided in this paragraph may be rendered ineffectual; provided, however, that all determinations of final relief shall be decided in arbitration, and pursuing the temporary or preliminary injunctive relief shall not constitute a waiver of rights under this agreement to arbitrate.

(e)     Regardless of any other terms of this arbitration agreement, claims may be brought before and remedies awarded by an administrative agency (such as the National Labor Relations Board, Occupational Safety and Health Administration, Equal Employment Opportunity Commission, or U.S. Department of Labor) if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate governed by the Federal Arbitration Act.

(f)     The AAA Rules may be found at www.adr.org or by searching for "AAA Commercial Arbitration Rules" using a service such as www.Google.com or www.Bing.com or by asking  support@wonolo.com to provide a copy.

(g)     This arbitration agreement is the full and complete agreement relating to the formal resolution of disputes covered by this arbitration agreement. Except In addition to as stated with regard to the Class Action Waiver, above, in the event any portion of this arbitration agreement is deemed unenforceable, the remainder of this arbitration agreement will be enforceable.  The Arbitration Agreement is a contractual agreement to mutually arbitrate claims; therefore any statements in any Company handbooks or policies that otherwise disclaim contracts do not apply to this Arbitration Agreement.

**9.3  Modifications to Application.** Wonolo reserves the right at any time to modify or discontinue, temporarily or permanently, the Application or the Service (or any part thereof) with or without notice. However, as stated above in Section 8.2 above, Section 9 ("General Provisions"), which contains the Arbitration Agreement, will survive any termination or expiration of this Agreement and/or any modification or termination of the Application or the Service. You agree that Wonolo shall not be liable to you or to any third party for any modification, suspension or discontinuance of the Application or the Services.

# Appendix

# PAYROLL SERVICES AGREEMENT

This Services Agreement ("**Services Agreement**") is a binding legal agreement between and among Customer, Wonoloer, Frontline Work Inc. ("**Frontline**") and Payroll Company that Frontline chooses as the employer of record (as described below). By using Frontline Payroll Services ("**Frontline Payroll Services**") provided by the Wonolo Services Application ("**Application**"), you signify that you have read, understand, accept and agree to be bound by this Services Agreement.

This Services Agreement includes and incorporates by this reference the agreements and policies (collectively the "**Terms of Service**") relating to the Application. Frontline reserves the right to revise this Services Agreement and the Terms of Service and all information linked to them from time to time in its sole discretion. Frontline may make such revisions without prior notice: check back often for updates.  Unless otherwise provided in such revision, the Services Agreement or Terms of Service, or any revised part of them, will take effect when and as posted.

## EMPLOYMENT RELATIONSHIP AND EMPLOYER OF RECORD

Upon accepting a Wonolo Request or an Open Request that is classified as Payroll with Customer through the Application (each a "**Payrolled Wonolo Engagement**"), Wonoloer agrees and understands that Frontline will choose the payroll service company (the "**Payroll Company**") to be the employer of record, meaning the Wonoloer will be an employee of Payroll Company (a "**Payroll Employee**") solely for Payrolled Wonolo Engagements. All other Wonolo Engagements will be on an independent contractor basis, as outlined in the Terms of Service.  Frontline will instruct Payroll Company to assign Wonoloer to work for Customer, and Customer is responsible for supervising Wonoloer.

Except as otherwise stated in this Services Agreement, Payroll Company is responsible for managing payroll, taxes, government documents, benefits (if applicable) and insurance. Customer is responsible for the supervision, direction and control of the day-to-day activities of each Wonoloer assigned to Customer.  Wonoloer is responsible for performing the agreed-upon work for Customer.

## HIRING REPRESENTATIONS, DISCLAIMERS AND LIMITATIONS

Customer acknowledges and agrees that Customer has selected a Wonoloer to become a Payroll Employee based upon Customer's determination that the Wonoloer accepted a Wonolo Request or an Open Request. Neither Frontline nor the Payroll

Company makes any representations or warranties as to the skills, experience, background or education of any Wonoloer.

Wonoloer acknowledges that Wonoloer has agreed to become a Payroll Employee servicing Customer based on Wonoloer's own determination that Customer offers work acceptable and appropriate for Wonoloer on terms that are acceptable to Wonoloer.  Wonoloer agrees to complete such documents as Frontline and/or Payroll Company may legally and reasonably require to complete the employer/employee relationship, including without limitation applicable tax forms and the I-9 requirements of the Immigration and Reform and Control Act of 1986 (collectively, the "**Employment Paperwork**").  Wonoloer understands and agrees that Wonoloer will not become an employee of Payroll Company or be entitled to work for Customer or receive payment from Payroll Company until all Employment Paperwork has been completed and returned to Payroll Company, and Payroll Company has accepted Wonoloer as an employee.

Customer will continue to issue Open or Wonolo Requests and pay for Wonoloer through the Application.  Frontline assumes no responsibility for and shall exert no control over the projects and work assigned to Wonoloer, nor has Frontline had any role in Customer's decision to engage Wonoloer via Payroll Services.  Frontline shall not direct the work of or supervise (to any degree, directly or indirectly) Wonoloer, nor shall Frontline determine any terms and conditions of Wonoloer's employment relationship with Payroll Company or Customer (including but not limited to rate of pay, performance evaluation, discipline and/or termination). Frontline merely provides the platform for Customer to request Wonoloer to accept certain work assignments, and separately facilitates the relationship between Customer and the Payroll Company that will handle the administration of payroll and other legal obligations of Customer with regard to Wonoloer. These facts, alone or in combination, do not make Frontline an employer of Wonoloer or a co-employer/joint employer with Customer and/or the Payroll Company. **Wonoloer acknowledges and agrees that he/she is not an employee, consultant, or independent contractor of Frontline, and that he/she will not be providing any services to Frontline (directly or indirectly) while employed by Payroll Company**.

Wonoloer shall be solely responsible for the professional performance of Wonoloer's work. Wonoloer shall be solely liable for its acts, omissions and negligence.

## PAYROLL SERVICES

The following are the services provided by the Payroll Company for Payroll Employees assigned to Customer: (i) calculation and payment of wages (including overtime wages) based upon submitted timesheets; (ii) collection, payment and reporting of all federal, state and local taxes on such wages; (iii) administration and management of unemployment claims; (iv) administration and collection of wages associated with wage garnishments; (v) workers' compensation coverage.  In addition, the Payroll Company shall provide and bear sole responsibility for any health or disability insurance,

retirement benefits or other welfare or pension benefits (if any) to which such personnel may be entitled based on eligibility.

## CONTROL OF WORKPLACE

Customer and Wonoloer acknowledge and agree that the neither Frontline nor the Payroll Company will control the workplace in which a Payroll Employee will perform services for a Customer.

## PAYROLL EMPLOYEE SUPERVISION AND LIMITATIONS ON SCOPE OF EMPLOYMENT

At all times, the Customer will maintain the exclusive supervision, direction and control of the day-to-day activities of each Payroll Employee.  The Customer shall be responsible for the implementation and enforcement of any and all workplace laws, rules, regulations and for any procedures that exist for the purpose of preventing the misappropriation, theft or embezzlement of the Customer's property, including without limitation intellectual property.

Customer acknowledges and agrees that Payroll Employees are not employees or consultants of Frontline and that Frontline maintains no control over any Wonolo Engagement, supervision of Wonoloers, payroll practices or other terms and conditions of the working relationship described herein. Customer further acknowledges and agrees that Payroll Employees are employees of the Payroll Company for purposes of payroll processing and, in some cases, the provision of certain statutorily required employee benefits, but that the Payroll Company maintains no control over the work assignments, supervision, or other terms and conditions of the working relationship except as described in this Services Agreement.

## COMPLIANCE WITH LAWS, RULES AND REGULATIONS

Customer shall comply with all state, federal and local laws, rules and regulations that govern or relate to its business, workplace, employees (including without limitation Payroll Employees), safety and government contracting. Customer shall comply with all reasonable directives regarding health and safety from the Payroll Company's workers' compensation carrier or any government agency. Customer is required to accept and adhere to the Payroll Company's determination regarding each Payroll Employee's exempt or non-exempt status for purposes of state and federal overtime laws.

Wonoloer agrees and understands that Wonoloer shall not work over 8 hours in a day or 29 hours in a week without express written approval by Customer, Frontline, and Payroll Company.

Notwithstanding the fact that the Payroll Company reserves the right to make determinations regarding the overtime exemption status of each Payroll Employee, **Customer is ultimately and solely responsible for the amount of any wages that are due but unpaid to each of its Payroll Employees**, including without limitation any wages, back wages, and liquidated damages determined to be due and owing in connection with any action challenging the overtime exemption status of any Payroll Employee**.**

## EQUAL EMPLOYMENT OPPORTUNITY, WORKPLACE LAWS

Payroll Company selected by Frontline to provide Payroll Services is an equal opportunity employer and does not discriminate against any candidate, applicant, employee, independent contractor or Payroll Employee on the basis of race, color, religion, sex, national origin, age, creed, ancestry, veteran or military status, disability unrelated to the essential functions of a job, or any other basis prohibited by federal, state or local law.  Customer and Payroll Employee shall comply with all federal, state, and local laws that prohibit unlawful discrimination or harassment.

### Policy Against Sexual Harassment And Other Illegal Harassment

Payroll Company, Customer and Frontline prohibit sexual and other illegal workplace harassment.  Customer shall train its Payroll Employees about their rights and responsibilities pursuant to applicable law pertaining to non-harassment or other illegal workplace harassment. Customer will be informed if any special training requirements legally pertain to a Payroll Employee by virtue of that person being employed by Payroll Company. Payroll Company and Customer will provide all Payroll Employees with written information detailing their rights and responsibilities under Customer's and Payroll Company's policies against sexual harassment and other illegal workplace harassment. Customer shall inform Payroll Company immediately of any complaint of illegal harassment by or against a Payroll Employee and shall undertake and complete a prompt and thorough investigation of any such complaint.  Upon notification, Payroll Company may assist Customer with the investigation of sexual harassment complaints made by or against Payroll Employees, but the costs associated with such investigation shall be borne by Customer.

If Wonoloer believes that he/she has not been provided equal opportunity in any manner, or if Wonoloer becomes aware of discrimination or harassment, Wonoloer should immediately report that conduct to Frontline at support@frontlinework.com or 302-703-7668.

## REQUIRED NOTIFICATIONS

The Customer will send all written notices and payroll communications to Frontline in accordance with the requirements of the Terms of Service.

Wonoloer must inform Customer of any work-related injury in connection with services performed for Customer.  Customer will provide Frontline with written notice within three (3) days of its own receipt of any notice of a work-related accident or injury, and within three (3) days of its receipt of any notice of any garnishment orders, involuntary deduction orders, notices of IRS liens and other forms of legal process affecting the payment of wages to a Payroll Employee.

## DISCLAIMERS

Notwithstanding anything to the contrary, Customer and Wonoloer acknowledge and agree that:

1.  Frontline, via the Application, is solely an online venue for buyers and sellers of services and, as such, shall not be responsible for any breach or failure to perform of the Payroll Company or any other action or inaction of the Payroll Company or any Customer or any Wonoloer; and
2.  Payroll Company shall not be responsible for any breach or failure to perform of Frontline or any Customer or any other action or inaction of Frontline or any Customer or any Wonoloer.

## CHANGE OF PAYROLL COMPANY

Frontline may designate a new third party payroll company ("**New Company**"), at any time in Frontline's sole discretion, to perform Frontline Payroll Services. Upon such designation, or at any other time as directed by Frontline, Customer shall: (i) cooperate with such New Company in every reasonable manner to ensure uninterrupted performance of the Frontline Payroll Services; or if directed by Frontline (ii) immediately assume all federal, state and local obligations of an employer to the Payroll Employees and immediately assume full responsibility for providing payroll services and workers' compensation coverage until such time as a New Company takes over such duties from The Payroll Company. If directed by Frontline, Customer shall inform Payroll Employees that they are no longer covered by the Payroll Company for Frontline Payroll Services, workers' compensation and/or health care policies.

## GENERAL PROVISIONS

**Governing Law and Venue**. The Services Agreement and any action related thereto will be governed, controlled, interpreted, and defined by and under the laws of the State as set forth in the Arbitration provision above, without giving effect to any conflicts of laws principles that require the application of the law of a different jurisdiction. Customer and Wonoloer hereby expressly consents to the personal jurisdiction and venue in the state and federal courts or the county in which Customer's principal place of business is located solely in the event of any lawsuit filed there against Wonoloer by Customer or by Frontline arising from or related to Frontline Payroll Services and/or this Services Agreement.

**Severability**. If any provision of the Services Agreement is, for any reason, held to be invalid or unenforceable, the other provisions of the Services Agreement will be unimpaired and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law.

**No Assignment**. The Services Agreement, and the party's rights and obligations herein, may not be assigned, subcontracted, delegated, or otherwise transferred by either party without the other's prior written consent, and any attempted Job, subcontract, delegation, or transfer in violation of the foregoing will be null and void. The terms of the Services Agreement will be binding upon assignees. Notwithstanding the foregoing, Customer may, without the consent of Wonoloer, assign any rights and obligations under the Payroll.

**Waiver**. Any waiver or failure to enforce any provision of the Services Agreement on one occasion will not be deemed a waiver of any other provision or of such provision on any other occasion.

**Execution and Delivery; Binding Effect**. The parties will evidence execution and delivery of the Services Agreement with the intention of becoming legally bound, by using Frontline Payroll Services provided by the Application.

**EXHIBIT B**



Zachary Crosner, Esq.
Managing Attorney
Los Angeles Office
9440 Santa Monica Blvd.,
Ste. 301
Beverly Hills, CA 90210

zach@crosnerlegal.com
office: (310) 496-5818
fax: (310) 510-6429

June 23, 2021

**VIA U.S. CERTIFIED MAIL AND
ELECTRONIC MAIL:**

Wonolo, Inc.
Attn: Legal Department
9450 SW Gemini Dr., Suite 96809
Beaverton, Oregon 97008-7105
Email: legal@wonolo.com

**VIA U.S. CERTIFIED MAIL:**
Corporation Service Company Which Will Do Business in California as CSC-Lawyers
Incorporating Service,
Agent for Service of Process for Wonolo, Inc.
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

**NOTICE OF INITIATION OF ARBITRATION**

---

To:         Wonolo, Inc.
Date:       June 23, 2021
Subject:    *Notice of Christopher Bogle's Initiation of Arbitration*

---

This office represents Christopher Bogle (hereinafter "Mr. Bogle") in connection with his claims under the California Labor Code against Wonolo. This letter and enclosed demand for arbitration constitute Mr. Bogle's attempt to satisfy the notice requirements outlined in Wonolo's arbitration agreement and set forth below:

*If either party wishes to initiate arbitration, the initiating party must notify the other party in writing via certified mail, return receipt requested, or hand delivery within the*

Page 1

*applicable statute of limitations period. This demand for arbitration must include (1) the name and address of the party seeking arbitration, (2) a statement of the legal and factual basis of the claim, and (3) a description of the remedy sought.*

*Any demand for arbitration by Contractor may be delivered to Wonolo at [legal@wonolo.com](mailto:legal@wonolo.com) so long as the details set forth in the previous sentence are presented in the demand for arbitration.*

Accordingly, Mr. Bogle provides the following:

    (1) **The name and address of the party seeking arbitration**:

Christopher Bogle, who may be contacted through his attorneys of record in this matter:

MICHAEL CROSNER (SBN 41294)
ZACHARY CROSNER (SBN 272295)
BLAKE JONES (SBN 211221)
blake@crosnerlegal.com
CHAD SAUNDERS (SBN 257810)
chad@crosnerlegal.com
CROSNER LEGAL, P.C.
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel.  (310) 496-5818
Fac. (818) 700-9973

GLENN A. DANAS (SBN 270317)
ROBINS KAPLAN LLP
2049 Century Park Blvd., Suite 3400
Los Angeles, CA  90067
Telephone: 310-229-5410
Facsimile: 310-229-5800
Email: GDanas@RobinsKaplan.com

J. AUSTIN HURT (*OSAAC application forthcoming*)
800 LaSalle Ave., Suite 2800
Minneapolis, MN  55402
Telephone: 612 349 8500
Facsimile: 612 339 4181
Email: AHurt@RobinsKaplan.com

    (2) **A statement of the legal and factual basis for the claim:**
        Please see enclosed Demand for Arbitration.

(3) **A description of the remedy sought:**

   Please see enclosed Demand for Arbitration.

Thank you for your attention to this matter.

Best Regards,

*Zachary M. Crosner*

Zachary M. Crosner, Esq.
CROSNER LEGAL, PC

# EXHIBIT A

MICHAEL CROSNER (SBN 41294)
ZACHARY CROSNER (SBN 272295)
BLAKE JONES (SBN 211221)
blake@crosnerlegal.com
CHAD SAUNDERS (SBN 257810)
chad@crosnerlegal.com
CROSNER LEGAL, P.C.
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel.  (310) 496-5818
Fac. (818) 700-9973

GLENN A. DANAS (SBN 270317)
ROBINS KAPLAN LLP
2049 Century Park Blvd., Suite 3400
Los Angeles, CA  90067
Telephone: 310-229-5410
Facsimile: 310-229-5800
Email: GDanas@RobinsKaplan.com

J. AUSTIN HURT (*OSAAC application forthcoming*)
800 LaSalle Ave., Suite 2800
Minneapolis, MN  55402
Telephone: 612 349 8500
Facsimile: 612 339 4181
Email: AHurt@RobinsKaplan.com
Attorneys for Claimant
CHRISTOPHER BOGLE

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| CHRISTOPHER BOGLE, an individual,<br><br>Claimant,<br><br>v.<br><br>WONOLO INC., a Delaware corporation; AXLEHIRE, INC., a Delaware corporation; YONG KIM, an individual; and DOES 1-50, inclusive,<br><br>Respondents. | **DEMAND FOR ARBITRATION** |

1    Claimant CHRISTOPHER BOGLE hereby submits this Demand for Arbitration of his

2   claims against Respondents WONOLO INC., AXLEHIRE, INC., YONG KIM, and DOES 1-50,

3   inclusive.  Claimant is informed and believes and thereon alleges as follows:

**THE PARTIES**

1.     Claimant CHRISTOPHER BOGLE ("Mr. Bogle") is an individual residing in the State of California.

2.     On information and belief, Respondent WONOLO INC. ("WONOLO") is a Delaware corporation that is duly licensed to conduct business in the State of California.  Based on information and belief, WONOLO is a staffing company that at all relevant times assigned Mr. Bogle to work at Respondent AXELHIRE, INC.'s warehouse facility.

3.     On information and belief, Respondent AXLEHIRE, INC. ("AXLEHIRE") is a Delaware corporation that is duly licensed to conduct business in the State of California.  AXLEHIRE is a logistics business with warehouse locations in Southern California.

4.     On information and belief, Respondent YONG KIM is a natural person residing in the State of California and is, and at all relevant times has been, the owner, director, officer, employee, and/or managing agent of Respondent WONOLO, and had direct control and power over the working conditions and the violations at issue in this Complaint and at all relevant times was acting on behalf of Respondent WONOLO.  On information and belief, YONG KIM devised and implemented the policies at issue in this complaint and "caused" these violations to occur and, under Labor code §§ 558.1 and 1197.1, YONG KIM may be held liable as the employer for such violations.

5.     Mr. Bogle is unaware of the names and capacities of those Respondents sued as DOES 1 through 50, but will amend this complaint when that information becomes known. Mr. Bogle is informed and believes and thereon alleges that, at all relevant times, each of the Respondents, including the DOE Respondents, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other Respondents, and engaging in the conduct alleged herein, was acting in the course and scope of, and in furtherance of, such relationship.  Unless otherwise specified, Mr. Bogle will refer to all Respondents as "Respondent," and each allegation pertains to each Respondent.

//

//

**JOINT LIABILITY**

6.      The definition of the phrase "to employ" is broadly construed under the applicable Industrial Wage Commission ("IWC") Wage Order(s) to have three alternative definitions: (1) to exercise control over the wages, hours or working conditions; (2) to suffer of permit to work; or (3) to engage, thereby creating a common law employment relationship. *See Martinez v. Combs*, 49 Cal.4th 35, 64 (2010).  One reason that the IWC defined "employer" in terms of exercising control was to reach situations in which multiple entities control different aspects of the employment relationship.  Supervision of the work, in the specific sense of exercising control over how services are properly performed, is properly viewed as one of the "working conditions" mentioned in the wage order.  *Id.* at 76. A joint employer relationship exists when one entity (such as a temporary employment agency) hires and pays a worker, and the other entity supervises the work. *Id.*

7.   During Mr. Bogle's assignment with Respondents WONOLO and AXLEHIRE, Mr. Bogle was jointly employed by both entities within the meaning of the Wage Orders, under the alternative definitions of "to employ" adopted by the California Supreme Court in *Martinez v. Combs*.   As discussed below, both WONOLO and AXLEHIRE (1) exercised control over Mr. Bogle's wages, hours and working conditions; (2) suffered or permitted Mr. Bogle to work for them; and, (3) engaged Mr. Bogle to work for them.

8.   In particular, WONOLO hired Mr. Bogle and entered into a written employment agreement with him, which among other terms and provisions, included an arbitration agreement pursuant to which Mr. Bogle brings this demand. During Mr. Bogle's employment, WONOLO maintained control over many aspects of Mr. Bogle's employment, including, among other things, having the authority to discipline him, change his job assignment, change his work hours, change his rates of pay, and to terminate his employment.

9.   In addition, when Mr. Bogle was first hired, based on information and belief, WONOLO provided Mr. Bogle with orientation and training materials. WONOLO issued Mr. Bogle written policies concerning his timekeeping, hours worked, and payment of his wages, with which Mr. Bogle was required to comply. Among other things, these policies provided that Mr. Bogle's weekly timecards be submitted to WONOLO and, WONOLO was supposed to process his timecards

and pay him for all hours he worked. WONOLO exercised ultimate control over the payment of Mr. Bogle's wages as WONOLO issued Mr. Bogle his paychecks. Finally, WONOLO directed Mr. Bogle to comply with all of AXLEHIRE'S policies and directions when he was assigned to work at AXLEHIRE.

10. AXLEHIRE similarly suffered or permitted Mr. Bogle to work for it or engaged Mr. Bogle to work for it. Mr. Bogle is informed and believes that AXLEHIRE entered into a written agreement with WONOLO pursuant to which AXLEHIRE paid WONOLO to provide it with workers, including Mr. Bogle, to conduct AXLEHIRE'S business operations. AXLEHIRE suffered or permitted Mr. Bogle to work at AXLEHIRE and for the entirety of his tenure.

11. During his assignment, AXLEHIRE further exercised control over Mr. Bogle's wages, hours and working conditions. Among other things, AXLEHIRE: (1) set Mr. Bogle's work hours and provided him with his work schedule; (2) directly supervised Mr. Bogle's work through its employees; (3) assigned Mr. Bogle his job duties and trained him on his job duties; (4) reprimanded and counseled Mr. Bogle regarding his work performance and other issues; (5) exercised authority to end Mr. Bogle's work assignment at any time, which essentially equated to a termination of employment as WONOLO did not guarantee other job assignments; (6) required Mr. Bogle to use AXLEHIRE's timekeeping system to record his time; (7) determined if and when Mr. Bogle would receive meal periods and rest breaks; (8) subjected Mr. Bogle to unlawful schedules for taking meal periods and rest breaks; (9) subjected Mr. Bogle to its rounding of the time clock policy and practice whereby he was not properly paid for overtime after the eighth hour of work; and, (10) was responsible for recording when Mr. Bogle began and ended his shifts. AXLEHIRE issued further written policies and practices and guidelines governing Mr. Bogle's working conditions with which he was required to comply.

**FACTUAL ALLEGATIONS**

12. Respondents employed Mr. Bogle from approximately April 2019, through his date of termination, on or about July 15, 2019. Mr. Bogle typically worked eleven hours per day Monday through Friday and 16-17 hours per day on Saturdays and Sundays.

13.     Throughout Mr. Bogle's employment, Respondents classified Mr. Bogle as an independent contractor when actually Mr. Bogle was an employee under California law, in that: (1) he was not free from Respondents' control and direction in the performance of the work, both under the contract for the performance of the work and in fact; (2) the work he performed was entirely within the usual course of Respondents' business of logistics, sorting and shipping;  and (3) at no time was Mr. Bogle customarily engaged in an independently established trade, occupation, or business of the same nature as the work he performed for Respondents.

14.     Because Respondents misclassified Mr. Bogle as an independent contractor, Mr. Bogle was not properly and fully compensated for all hours at the correct rate of pay. Respondents required, suffered and/or permitted Mr. Bogle to work time for which he was not compensated, which included, time spent performing pre-shift off-the-clock work, such as but not limited to, setting up the palettes for loading, setting down paper markers so workers knew where to place the boxes when loading, sweeping and other cleaning duties and post-shift off-the-clock work, such as but not limited to, sweeping and other cleaning duties.  Mr. Bogle was directly instructed by his supervisor to perform these duties off the clock.

15.     Moreover, based on information and belief, Respondent WONOLOused a time-rounding system that, as applied, worked to detrimentally shave and round time off from Mr. Bogle's workday. Mr. Bogle would clock in and out for his scheduled shifts using a Wonolo provided-app on his personal phone, as instructed.  Yet these actual times would thereafter be manipulated, i.e. rounded, to Respondent's benefit.  Through the operation of Respondent WONOLO's rounding system, Mr. Bogle would regularly be deprived of wages due because Respondent WONOLO's time recording system resulted in understating actual compensable work time. Given Mr. Bogle's typical work schedule, this off-the-clock work also resulted in denied overtime wages.

16.     Respondents further violated California overtime laws by not paying the correct overtime rate for time counted by Respondents as time worked.  For example, Mr. Bogle would receive $15/hour for his work up to eight (8) hours and just a slightly, arbitrarily higher, rate of $18/hour for time counted by Respondents as hours worked beyond eight (8) hours in a day.

17.     Mr. Bogle was not provided timely, duty free, thirty-minute uninterrupted meal Periods, as Respondents had nothing structured to provide meal breaks and employees like Mr. Bogle were not permitted to clock out for them.  Mr. Bogle therefore was forced to work through part or all of his owed meal periods.  Indeed, Respondent regularly required, suffered or permitted Mr. Bogle to work more than five, ten, and even 15 hours in day without providing any proper meal periods. Based on information and belief, Respondents did not provide Mr. Bogle the meal periods to which he was entitled because Respondents misclassified Mr. Bogle as an independent contractor. Respondents' illegal meal period policy and/or practice therefore stemmed from its intentional independent contractor misclassification scheme. Mr. Bogle did not receive the meal periods to which he was entitled, and Respondents further failed to pay Mr. Bogle an additional hour of wages at his regular rate of pay for each workday a meal period was not provided.  In fact, Mr. Bogle never received a meal period premium during his entire employment period.

18.     Respondents failed to provide Mr. Bogle required and/or fully compliant rest periods. Based on information and belief, Respondents did not provide Mr. Bogle the rest periods to which he was entitled because Respondents misclassified Mr. Bogle as an independent contractor. As with meal breaks, Respondents had nothing structured to provide Mr. Bogle rest breaks and Mr. Bogle simply remained on duty, under Respondents' control, during all mandated rest periods. Respondents regularly required, suffered or permitted Mr. Bogle to work in excess of eight, 10, and 12 hours in a workday without providing Mr. Bogle with all the rest breaks to which he was entitled. Respondents further employed a policy and/or practice of not paying Mr. Bogle the premium wages to which he was entitled for workdays on which he did not receive all legally required and fully compliant rest periods.  As with meal period premiums, Mr. Bogle never received a rest period premium during his employment.

19.     Respondents failed to reimburse Mr. Bogle for all necessary business-related expenditures incurred by Mr. Bogle in direct discharge of his duties. For example, Respondents instructed and required Mr. Bogle to use his personal cell phone/other mobile device for work purposes yet failed to provide any reimbursement for the cell phone/data plan charge expenses incurred in connection therewith. Based on information and belief, Respondent WONOLO also

failed to reimburse for mileage/all vehicle-related expenses and uniform expenses Mr. Bogle incurred in connection with the performance of his job duties.

20. Furthermore, Respondents unlawfully deducted wages from Mr. Bogle's paychecks during his employment. For example, for every $200 paid, Respondents would deduct $7.00 for what Respondents called "A Trust & Safety Fee." While Respondents failed to explain the exact purpose of the $7.00 deductions, it was loosely understood that this money would go into a Trust Account to be held in the employee's name in the event the employee was injured on the job and needed funds for medical treatment. However, Respondents was required to have workers' compensation insurance to cover such expenses in the event an employee was injured on the job; instead, Respondents illegally passed those charges onto Mr. Bogle and unlawfully deducted from and withheld his owed wages. On information and belief, Mr. Bogle never received any of these illegally deducted wages back from Respondents when his employment terminated.

21. As a further consequence of its intentional misclassification scheme, Respondents failed to pay sick leave as required by California law. Based on information and belief, Respondents did not provide Mr. Bogle with any sick leave pay.

22. Additionally, Respondents failed to provide Mr. Bogle with accurate, itemized wage statements as required by Labor Code section 226. To the extent wage statements were provided, they do not accurately reflect the total gross and net wages earned, including all earned regular and overtime wages and do not accurately reflect all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate. Moreover, due to Respondents requiring off-the-clock work by virtue of inter-alia Respondents' time-shaving system described herein, Respondents' wage statements do not display the actual hours Mr. Bogle worked, a requirement of Labor Code section 226.

23. Respondents further failed to pay Mr. Bogle all wages due upon termination of employment. Mr. Bogle did not receive his final paycheck until approximately two weeks after his termination date, and his final paycheck, once provided, did not include all wages owed. As described, for every 200.00 the Mr. Bogle was paid, Respondents would take $7.00 for what they

- 7 -

called A Trust & Safety Fee. Mr. Bogle never saw any of this unlawfully deducted money in his final paycheck.

## FIRST CAUSE OF ACTION

(Recovery of Unpaid Minimum Wages and Liquidated Damages)

Against All Respondents

24.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

25.     California law provides employees in California must be paid for all hours worked, up to 40 per week or eight (8) per day, at a regular time rate no less than the mandated minimum wage.  As alleged herein, Mr. Bogle regularly worked hours for which he was not compensated by Respondent as required by California law.

26.     Pursuant to Labor Code sections 1194 and 1194.2 and 558.1, Mr. Bogle is entitled to recover all unpaid minimum time wages and liquidated damages thereon, plus attorney's fees and costs, in an amount according to proof.

## SECOND CAUSE OF ACTION

(Recovery of Unpaid Overtime)

Against WONOLO INC., AXLEHIRE, INC. and DOES 1-50, inclusive

27.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

28.     California law provides employees in California must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 per week or eight (8) per day and must be paid double wages for all hours worked in excess of 12 per day, unless they are exempt.   California law also provides that any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.  As alleged herein, Mr. Bogle regularly worked more than eight (8) hours per day, often more than twelve hours per day, and always seven days a week but was not paid all overtime wages due and owing under California law.

29.     Pursuant to Labor Code section 1194, Mr. Bogle is entitled to recover all unpaid overtime wages, plus attorney's fees and costs, in an amount according to proof.

## THIRD CAUSE OF ACTION

(Failure to Provide Meal Periods or Meal Period Premium Wages)

Against WONOLO INC., AXLEHIRE, INC. and DOES 1-50, inclusive

30.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

31.     Under the Labor Code and IWC Wage Orders, Respondents were required to provide Mr. Bogle with one thirty-minute meal break free from all duties for all shifts longer than five (5) hours, and a second thirty-minute meal break free from all duties for all shifts longer than 10 hours. Employers covered by the Wage Orders have an obligation to both (1) relieve their employees for at least one meal period for shifts over five hours, and (2) to record having done so. If the employer fails to properly record a valid meal period, it is presumed no meal period was provided.

32.     As alleged herein, Mr. Bogle regularly worked periods of more than five (5), ten and fifteen hours in a workday without being provided requisite mandatory timely, thirty-minute, duty-free meal periods. Respondents also failed to pay Mr. Bogle an additional hour of wages at his regular rate for each workday a meal period was not provided.

33.     Respondents failed to provide Mr. Bogle with all required meal periods, or with compensation in lieu thereof. As a result, under Labor Code section 226.7, Mr. Bogle is entitled to one additional hour's pay for each day a meal period was missed, late or interrupted, all in an amount according to proof.

## FOURTH CAUSE OF ACTION

(Failure to Provide Rest Periods or Rest Break Premium Wages)

Against WONOLO INC., AXLEHIRE, INC. and DOES 1-50, inclusive

34.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

35.     California law requires an employer to authorize or permit an employee to take a rest period of ten net minutes for every four hours worked, or major fraction thereof, and such rest periods must be in the middle of the four-hour period insofar as practicable. If the employer fails to provide any required rest periods or fails to provide a fully compliant rest break for a net ten minutes wherein the employee is fully relieved of all duties and all employer control, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday the employer did not provide a legally required and/or fully compliant rest period.

36.     Respondents failed to provide Mr. Bogle all required and/or fully compliant rest periods, or compensation in lieu thereof.  Respondents employed policies and procedures that ensured Mr. Bogle would not receive all legally required rest periods as Respondents improperly classified Mr. Bogle as an independent contractor rather than as an employee and did not authorize nor permit all required rest periods in strict accordance with the timing requirements of all applicable Wage Orders. Respondents similarly employed policies and procedures that rendered rest periods non-compliant with the requirements of California law by, inter alia, failing to relieve Mr. Bogle of all duties and all employer control. Respondents further employed policies and procedures ensuring Mr. Bogle never received a rest period premium during his employment.

37.     Respondents failed to provide Mr. Bogle with all required rest periods, or with compensation in lieu thereof. As a result, under Labor Code section 226.7, Mr. Bogle is entitled to one additional hour's pay for each day a rest break was missed, late or interrupted, all in an amount according to proof.

### FIFTH CAUSE OF ACTION

(Failure to Provide Accurate Wage Statements)

Against WONOLO INC., AXLEHIRE, INC. and DOES 1-50, inclusive

38.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

39.     The California Labor Code provides that, at the time of each payment of wages, the employer must provide each employee with an itemized statement showing, inter alia, gross wages earned, total hours worked, all deductions taken, net wages earned, the inclusive dates for which the employee is being paid, the employee's name and last four digits of their social security number, the name and address of the legal entity that is the employer, and all applicable hourly rates in effect during the pay period and all hours worked at each rate.

40.     Respondents knowingly and intentionally failed to provide Mr. Bogle with proper, itemized wage statements.  The wage statements provided to Mr. Bogle do not show total gross and net wages earned, total/actual hours worked, all applicable hourly rates in effect during the pay period and all hours worked at each rate.  Accordingly, under Labor Code section 226, Mr. Bogle is entitled to penalties in the amount of $50.00 for the initial pay period in which a violation occurred,

and $100.00 for each subsequent pay period in which a violation occurred, up to an aggregate penalty of $4,000.00 per employee, plus attorney's fees and costs, all in an amount according to proof.

### SIXTH CAUSE OF ACTION

(Failure to Pay All Earned and Unpaid Wages Upon Separation of Employment)

Against WONOLO INC., AXLEHIRE, INC. and DOES 1-50, inclusive

41.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

42.     The California Labor Code provides that, at the time of termination of employment, the employer must pay an employee all wages due and owing within the time frames set forth in Labor Code sections 201, *et seq.* Respondents willfully failed to pay Mr. Bogle all wages due and owing within the deadlines set forth in Labor Code sections 201, *et seq.*

43.     Under Labor Code section 203, Mr. Bogle is entitled to recover waiting time penalties of up to 30 days' pay, plus attorney's fees and costs, in an amount according to proof.

### SEVENTH CAUSE OF ACTION

(Failure to Reimburse Business Expenses)

Against WONOLO INC., AXLEHIRE, INC. and DOES 1-50, inclusive

44.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

45.     California Labor Code section 2802 provides an employer shall fully reimburse an employee for all reasonable and necessary expenses incurred in the performance of the employee's job duties. As alleged herein, Mr. Bogle regularly incurred expenses including, inter alia, vehicle mileage and related expenses, cell phone expenses, expenses associated with purchasing equipment for use in the performance of his job duties, which expenses were not fully reimbursed by Respondents.

46.     Pursuant to Labor Code section 2802, Mr. Bogle is entitled to recover his unreimbursed business expenses, plus attorney's fees and costs, in an amount according to proof.

### EIGHTH CAUSE OF ACTION

(Unlawful Deductions)

Against WONOLO INC., AXLEHIRE, INC. and DOES 1-50, inclusive

47.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

48.     Labor Code Section 221 prohibits an employer from "collect[ing] or receiv[ing] from an employee any part of wages theretofore paid by said employer to said employee." Mr. Bogle alleges on information and belief that Respondents made unlawful deductions from his paychecks during his employment.  For example, for every $200 paid, Respondents would deduct $7.00 for what Respondents called A Trust & Safety Fee. While it was not clear what the purpose of the $7.00 was for, it was loosely understood that this money would go into a "Trust Account" that was held in the employee's name in the event the employee was injured on the job and needed funds for medical treatment.  Based on information and belief, Respondents were required to have workers' compensation insurance to cover such expenses in the event an employee was injured on the job; instead, Respondents illegally passed those charges onto Mr. Bogle and unlawfully deducted and withheld his owed wages.

49.     Mr. Bogle is entitled to recover the amounts unlawfully deducted and retained by Respondents, plus attorney's fees and costs, in an amount according to proof.

**NINTH CAUSE OF ACTION**

(Failure to Pay Sick Leave)

Against WONOLO INC., AXLEHIRE, INC. and DOES 1-50, inclusive

50.     Mr. Bogle incorporates all preceding paragraphs as if fully alleged herein.

51.     California Labor Code section 246(1)(1) provides that paid sick time for non-exempt employees be "calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in the workweek."

52.     California Labor Code section 246(1)(2) further provides that paid sick time for non-exempt employees be calculated by dividing the employee's total hours worked in the full pay periods of the prior 90 days of employment.

53.     Respondents violated Labor Code section 246 by failing to pay all owed sick leave time. Respondents intentionally misclassified Mr. Bogle so as to avoid its obligations under the Labor Code to pay sick leave to Mr. Bogle and failed to pay sick leave at all.

1

**<u>PRAYER</u>**

2

WHEREFORE, Mr. Bogle prays for judgment against the Respondents, as follows:

3

    1.    For damages according to proof;

4

    2.    For statutory penalties;

5

    3.    For civil penalties;

6

    4.    For liquidated damages under Labor Code section 1994.2;

7

    5.    For reasonable attorney's fees and costs; and

8

    6.    For such other and further relief as the Arbitrator deems just and proper.

9

10

Dated:  June 13, 2021                CROSNER LEGAL, P.C.

11

                                     _____

                                     MICHAEL CROSNER (SBN 41294)

12

                                     ZACHARY CROSNER (SBN 272295)

                                     BLAKE JONES (SBN 211221)

13

                                     CHAD SAUNDERS (SBN 257810)

                                     CROSNER LEGAL, P.C.

14

                                     9440 Santa Monica Blvd. Suite 301

                                     Beverly Hills, CA 90210

15

                                     Tel.  (310) 496-5818

16

                                     Fac. (818) 700-9973

17

                                     ROBINS KAPLAN LLP

18

                                     GLENN A. DANAS (SBN 270317)

19

                                     2049 Century Park Blvd., Suite 3400

                                     Los Angeles, CA  90067

20

                                     Telephone: 310-229-5410

                                     Facsimile: 310-229-5800

21

                                     Email: GDanas@RobinsKaplan.com

22

                                   J. AUSTIN HURT (*OSAAC application forthcoming*)

23

                                   800 LaSalle Ave., Suite 2800

                                   Minneapolis, MN  55402

24

                                   Telephone: 612 349 8500

                                   Facsimile: 612 339 4181

25

                                   Email: AHurt@RobinsKaplan.com

26

                                   Attorneys for Claimant

27

                                   CHRISTOPHER BOGLE

28

# EXHIBIT C

ctronically FILED by Superior Court of California, County of Los Angeles on 05/26/2020 03:23 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk

Case 2:21-cv-08878-MCS-KS   Document 20-1 Filed 01/05/22   Page 43 of 55   Page ID #:131

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
  WONOLO INC., a Delaware Corporation; AXLEHIRE, INC., a Delaware
  Corporation; YONG KIM, an Individual; and DOES 1-50, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CHRISTOPHER BOGLE, on behalf of all others similarly
aggrieved

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court for the State of California
for the county of Los Angeles- Stanley Mosk
111 N. Hill St., Los Angeles, CA, 90012

CASE NUMBER:
*(Número del Caso):*
20STCV19865

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CROSNER LEGAL, PC 433 N. Camden Dr., Ste. 400 Beverly Hills, CA 90210 Tel: (310) 496-5818

Sherri R. Carter Executive Officer / Clerk of Court

DATE: 05/26/2020          Clerk, by _____ N. Alvarez _____, Deputy
*(Fecha)*                 *(Secretario)*                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*  WONOLO INC., a Delaware Corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

ZACHARY CROSNER (SBN 272295)
zach@crosnerlegal.com
MICHAEL CROSNER (SBN 41294)
mike@crosnerlegal.com
BLAKE JONES (SBN 211221)
**CROSNER LEGAL, P.C.**
433 N. Camden Dr., Suite 400
Beverly Hills, CA 90210
Tel.  (310) 496-5818
Fac. (818) 700-9973

Attorneys for Plaintiff
CHRISTOPHER BOGLE

# SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

20STCV19865

| | |
|---|---|
| CHRISTOPHER BOGLE, on behalf of all others similarly aggrieved,<br><br>        Plaintiff,<br><br>    vs.<br><br>WONOLO INC., a Delaware Corporation; AXLEHIRE, INC., a Delaware Corporation; YONG KIM, an Individual; and DOES 1-50, Inclusive,<br><br>        Defendants. | CASE NO.<br><br>REPRESENTATIVE COMPLAINT FOR VIOLATION OF PRIVATE ATTORNEYS GENERAL ACT, CAL. LABOR CODE SECTIONS 2698, *et seq.*<br><br>JURY TRIAL DEMANDED |

## GENERAL ALLEGATIONS

1.     Plaintiff CHRISTOPHER BOGLE ("Plaintiff") is an individual residing in the State of California.

2.     On information and belief, Defendant WONOLO INC. is a Delaware corporation that is duly licensed to conduct business in the State of California.

3.     On information and belief, Defendant AXLEHIRE, INC. is a Delaware corporation that is duly licensed to conduct business in the State of California.

4.     On information and belief, Defendant YONG KIM is an individual residing in the State of California. YONG KIM is the CEO of Defendant WONOLO, INC.

5.     Plaintiff is unaware of the names and capacities of those defendants sued as DOES 1 through 50, but will amend this complaint when that information becomes known. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each of the defendants, including the DOE defendants, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants, and in engaging in the conduct alleged herein, was acting in the course and scope of, and in furtherance of, such relationship.  Unless otherwise specified, Plaintiff will refer to all defendants as "Defendant," and each allegation pertains to each defendant.

6.     This court possesses original subject matter jurisdiction over this matter. Defendant has sufficient minimum contacts in California and has intentionally availed itself of the California market so as to render the exercise of jurisdiction proper. Venue is proper in this judicial district because the complained of conduct occurred in this judicial district.

7.     Plaintiff typically worked 7 days a week, 10 or more hours each workday and/or shift. Plaintiff regularly worked in excess of 15 hours a day and/or shift on the weekends. Upon information and belief, other aggrieved employees worked similar shifts. Defendant classified Plaintiff and other aggrieved employees as independent contractors when they should have been classified as employees. Because Defendant improperly classified Plaintiff and other aggrieved employees an independent contractor rather than as an employees, they were not properly and fully compensated for all hours worked, including all overtime hours worked and/or at the correct

2

1   rate of pay. Defendant required, suffered and/or permitted Plaintiff and other aggrieved

2   employees to work off-the-clock, including during off-duty meal periods, but did not compensate

3   them for this time. Plaintiff and other aggrieved employees regularly worked overtime but

4   Defendant did not pay them correct overtime wages. Defendant also did not provide Plaintiff and

5   aggrieved employees with duty-free, uninterrupted thirty-minute meal periods when they worked

6   more than 5 and 10 hours in a workday. Despite failing to provide Plaintiff and the aggrieved

7   employees with meal periods, Defendant did not pay required premium wages in violation of

8   California law. Similarly, Defendant did not provide Plaintiff and aggrieved employees with all

9   required rest breaks, or with compensation in lieu thereof, in violation of California law. Upon

10  information and belief, Defendant lacked legally compliant meal and rest period policies and

11  practices. Plaintiff and aggrieved employees also were required to use their personal cell phones

12  for work purposes and purchase uniforms, but Defendant failed to reimburse them for these and

13  other reasonably necessary business expenses. Defendant further made unlawful deductions from

14  Plaintiff's and other aggrieved employees' earnings in violation of California law. Additionally,

15  Defendant failed to provide Plaintiff and other aggrieved employees with accurate, itemized wage

16  statements to Plaintiff and aggrieved employees, and failed to pay Plaintiff and aggrieved

17  employees all wages due in a timely fashion upon termination of employment.

18      8.   Plaintiff brings this complaint under the Private Attorneys General Act of 2004,

19  Labor Code sections 2698, *et seq.,* ("PAGA"), as a representative action on behalf of the State of

20  California regarding violations of the Labor Code as to all similarly aggrieved individuals who

21  worked for Defendant WONOLO, INC. and were staffed and/or assigned to work at Defendant

22  AXLEHIRE, INC. in the State of California. This action is brought solely under PAGA and seeks

23  no relief beyond that available under PAGA.

24      9.   During the period beginning one-year period preceding the filing of the required

25  PAGA notice with the Labor Workforce and Development Agency, and continuing through the

26  present, as alleged herein, Defendant violated Labor Code sections 201, 202, 204, 216, 221-223,

27  226, 226.7, 226.8, 432.5, 510, 512, 558, 558.1, 1174, 1194, 1197, 1198, 1199, 2802, and all

28  applicable Wage Orders, as to Plaintiff and all other similarly aggrieved employees employed by

3

1   Defendant in California. These violations subject Defendant to civil penalties as set forth in the

2   foregoing statutes as well as other provisions of the Labor Code, including without limitation

3   Labor Code sections 203, 210, 225.5, 226.3, 256, 558, 558.1, 1174.5, 1194.2, 1197.1, and

4   2699, and (3) IWC Wage Order 9-2001 (and all applicable IWC Wage Orders), section 20.

5   **FIRST CAUSE OF ACTION**

6   **VIOLATION OF PRIVATE ATTORNEYS GENERAL ACT,**

7   **LABOR CODE SECTIONS 2698, *ET SEQ.***

8        10.     Plaintiff incorporates all preceding paragraphs as if fully alleged herein.

9        11.     California law mandates that employees in California be paid for all hours worked,

10   up to 40 per week or 8 per day, at a regular time rate no less than the mandated minimum wage.

11   Defendant violated California minimum wage laws in part by improperly classifying Plaintiff and

12   aggrieved employees as independent contractors when Plaintiff and aggrieved employees were in

13   fact employees. Defendant also violated California minimum wage laws by using a rounding

14   system that, as applied, worked to detrimentally shave and round time off from Plaintiff and

15   similarly aggrieved employees' work days. Specifically, Plaintiff alleges on information and

16   belief that through the operation of Defendant's rounding system, Plaintiff and similarly

17   aggrieved employees would systematically be deprived of compensable time because the time

18   recording system implemented by Defendant resulted in understating actual compensable work

19   time due to the rounding. Defendant further required, suffered and/or permitted Plaintiff to work

20   off-the-clock and during off-duty meal periods, resulting in unpaid wages. Accordingly, Plaintiff

21   and similarly aggrieved employees were not being paid for all hours worked causing minimum

22   wage violations pursuant to Labor Code sections 1194-1199, and all applicable Wage Orders.

23   These violations subject Defendant to civil penalties under the foregoing Labor Code sections and

24   other applicable Labor Code sections, including without limitation Labor Code sections 1197.1

25   and 2699. Each violation of each Labor Code section and Wage Order provision, for each

26   aggrieved employee, results in a separate civil penalty.

27        12.     California law requires employers to pay overtime equal to one and one-half times

28   the regular hourly rate of pay for each hour worked beyond eight (8) hours per workday and each

4

1    hour worked beyond forty (40) hours per work week.  Lab. Code § 510; IWC Wage Order 9-2001

2    (and all applicable Wage Orders), § 3.  Employers must pay overtime equal to double the regular

3    hourly rate of pay for each hour worked beyond twelve (12) hours per workday and for all hours

4    worked in excess of eight (8) hours on the seventh consecutive day or work in a work week.  Id.

5        13.    Defendant has violated California's overtime laws by, among other things,

6    misclassifying its workers as independent contractors when the workers were in facts employees,

7    and failing to correctly calculate, or record at all, the total number of hours worked by Plaintiff

8    and similarly aggrieved employees (by virtue of its time-shaving rounding system) and not paying

9    proper overtime rates for all overtime worked. Based on employees' regular work schedules,

10   Plaintiff and similarly aggrieved employees often worked more than 8 hours in a day and/or 40

11   hours in a week for which they were not properly compensated. This conduct results in violations

12   of Labor Code sections 218.5, 510, 1198-1199, and IWC Wage Order 9-2001 (and all applicable

13   Wage Orders), § 12(A). These violations subject Defendant to civil penalties under Labor Code

14   sections 218.5, and 2699, and Wage Order 9-2001 (and all applicable Wage Orders), § 20.  Each

15   violation of each Labor Code section and Wage Order provision results in a separate civil penalty,

16   for each aggrieved employee, for each pay period during which the referenced statutes and Wage

17   Order provisions were violated.

18       14.    Under the Labor Code and IWC Wage Orders, Defendant was required to provide

19   Plaintiff and similarly aggrieved employees with one 30-minute meal period free from all duties

20   for all shifts longer than 5 hours, and a second 30-minute meal period free from all duties for all

21   shifts longer than 10 hours. Meal periods can be waived, but only under the following

22   circumstances: (1) if an employee's total work period in a day is over five (5) hours but no more

23   than six (6) hours, the required meal period may be waived by mutual consent of the employer

24   and employee, and (2) if an employee's total work period in a day is over ten (10) hours but no

25   more than twelve (12) hours, the required second meal period may be waived by mutual consent

26   of the employer and employee, but only if the first meal period was not waived. Employers

27   covered by the Wage Orders have an obligation to both (1) relieve their employees for at least one

28   meal period for shifts over five hours (see above), and (2) to record having done so. If the

5

1  employer fails to properly record a valid meal period, it is presumed no meal period was
2  provided.

3      15.    Plaintiff and similarly aggrieved employees regularly worked periods of more than
4  five and ten hours in a workday without being provided mandatory thirty-minute, duty-free meal
5  periods. Upon information and belief, Defendant did not advise Plaintiff and other aggrieved
6  employees of their right to, timing, or number of meal periods because Defendant misclassified
7  Plaintiff and aggrieved employees as independent contractors. Defendant regularly required,
8  suffered or permitted Plaintiff and other aggrieved employees to work more than 5, 10, and even
9  15 hours in day without providing proper meal periods to them. Defendant also did not record
10  Plaintiff's and other aggrieved employees' meal periods. Per Defendant's illegal meal period
11  policy/practice, Plaintiff and similarly aggrieved employees did not receive all the meal periods to
12  which they were entitled and Defendant further failed to pay Plaintiff and similarly aggrieved
13  employees an additional hour of wages at their regular rates of pay for each workday a meal
14  period was not provided.

15      16.    Defendant failed to provide Plaintiff and similarly aggrieved employees all
16  required and/or fully compliant rest periods, or compensation in lieu thereof. Upon information
17  and belief, Defendant did not advise Plaintiff and other aggrieved employees of their right to,
18  timing, or number of rest breaks because Defendant misclassified Plaintiff and aggrieved
19  employees as independent contractors. Defendant employed policies and procedures that ensured
20  Plaintiff and other aggrieved employees would not receive all legally required rest periods (i.e.,
21  misclassifying them as independent contractors), as Defendant did not authorize and permit all
22  required rest periods in strict accordance to, and in compliance with, the timing requirements of
23  all applicable Wage Orders. Defendant regularly required, suffered or permitted Plaintiff and
24  other aggrieved employees to work in excess of 8, 10, and 12 hours in a workday without
25  providing Plaintiff and aggrieved employees with all the rest breaks to which they were entitled.
26  Defendant further employed policies and procedures ensuring Plaintiff and similarly aggrieved
27  employees did not receive premium wages to compensate them for workdays they did not receive
28  all legally required and fully compliant rest periods.

6

17.     California law provides that, at the time of each payment of wages, the employer must provide each employee with an itemized statement showing, inter alia, gross wages earned, total hours worked, all deductions taken, net wages earned, the inclusive dates for which the employee is being paid, the employee's name and last four digits of their social security number, the name and address of the legal entity that it is the employer, and all applicable hourly rates in effect during the pay period and all hours worked at each rate.

18.     Defendant knowingly and intentionally failed to provide Plaintiff and other aggrieved employees with proper, itemized wage statements. Defendant did not always provide Plaintiff and aggrieved employees with wage statements. What Defendant did provide, if it did, failed to accurately reflect, inter alia, gross wages earned, total hours worked, net wages earned, and all applicable hourly rates in effect during each pay period and all hours worked at each applicable hourly rate, for all the reasons herein mentioned. Accordingly, Defendant has violated Labor Code section 226 as to Plaintiff and all similarly aggrieved employees. These violations subject Defendant to civil penalties under the Labor Code, including without limitation Labor Code sections 226 and 2699. Each violation of each Labor Code section and Wage Order provision, for each aggrieved employee, results in a separate civil penalty.

19.     California Labor Code section 2802 requires an employer to reimburse employees for all business expenses. Plaintiff is informed and believes, and based thereon alleges, that Defendant knew or should have known that Plaintiff and the other aggrieved employees were entitled to reimbursement for necessary business-related expenses and costs. Plaintiff and aggrieved employees incurred expenses in direct consequence of the discharge of their duties for Defendant, including having to purchase work uniforms and having use their personal cell phones for business related activities. Defendant has not reimbursed Plaintiff and aggrieved employees for these and other expenses. Upon information and belief, Defendant classified Plaintiff and other aggrieved employees as independent contractors to avoid having to pay Plaintiff's and other aggrieved employees' business expenses.

REPRESENTATIVE ACTION COMPLAINT

20.     California law requires employers to keep "accurate and complete" payroll records showing, among other things, the hours worked daily by all non-exempt employees. The applicable IWC Wage Order similarly requires employers to keep time records showing, inter alia, when the employees begins and end each work period and reflecting the times during which all owed meal periods are provided each day. At all relevant times, Defendant has failed, and continues to fail, to keep the required time records by misclassifying Plaintiff and aggrieved employees as independent contractors and including, but not limited to, adopting and maintaining an unlawful time rounding system that as applied worked to detrimentally shave and round time off from Plaintiff and similarly aggrieved employees' workdays. Plaintiff alleges on information and belief that through the operation of Defendant's rounding system, Plaintiff and similarly aggrieved employees would systematically be deprived of compensable time because the time recording system implemented by Defendant would almost always, if not always, understate actual compensable work time due to the rounding. The misclassification, time shaving, and Defendant's failure to provide proper meal and rest periods or premium compensation in liue thereof resulted in record-keeping violations.

21.     Defendant's failure to keep "accurate and complete" payroll records for Plaintiff and other similarly aggrieved employees violates Labor Code sections 1174, 1198-99, and Wage Order 9-2001 (and all applicable Wage Orders), section 7. These violations subject Defendant to civil penalties under the Labor Code, including without limitation sections 1174.5 and 2699. Each violation of each Labor Code section and Wage Order provision, for each aggrieved employee, results in a separate civil penalty.

22.     Labor Code sections 1198 and 1199 make it unlawful to employ any individual under conditions of labor prohibited by the Wage Orders, and any violation, refusal, or neglect to comply with any provision within Part 4, Chapter 1 of the Labor Code, including sections 1174, 1197, and 1198, or other order or ruling of the IWC. Defendant's violations with respect to minimum wages and/or overtime wages, as alleged herein, result in separate violations of Labor Code sections 1198 and 1199, and subject Defendant to civil penalties under the Labor Code, including without limitation Labor Code sections 1197.1 and 2699. Each violation of each Labor

8

1  Code section and Wage Order provision, for each aggrieved employee, results in a separate civil
2  penalty.

3       23.    California Labor Code section 204 requires an employer to pay employees all
4  wages due and payable at least twice each calendar month. For reasons discussed herein,
5  Defendant failed to comply with Labor Code section 204 by failing to timely pay twice during
6  each calendar month all wages due and payable to Plaintiff and other similarly aggrieved
7  employees. Defendant's violations of Labor Code section 204 subject Defendant to civil
8  penalties, including but not limited to the penalties set forth in California Labor Code sections
9  210 and 2699. Each violation results in a separate civil penalty, for each aggrieved employee for
10 each pay period during which the statutory provisions were violated.

11      24.    Labor Code Section 221 prohibits an employer from "collect[ing] or receiv[ing]
12 from an employee any part of wages theretofore paid by said employer to said employee."
13 Plaintiff alleges on information and belief that Defendant made unlawful deductions from his and
14 other aggrieved employees' paychecks during the relevant time period, to wit: Among other
15 issues with the final pay check Plaintiff received, was the fact that $7.00 for every $200.00
16 deduction was not reflected in the final pay check. For every 200.00 the Plaintiff and other
17 aggrieved employee earned, Defendant would take $7.00 for what they called A Trust & Safety
18 Fee. While it was not clear what the purpose of the $7.00 was for, it was loosely understood that
19 this money would go in a Trust account that was held in the employee's name in the event they
20 were injured on the job and needed funds for medical treatment. But Plaintiff never got any of
21 this money back and, upon information and belief, nether did other aggrieved employees.

22      25.    Labor Code section 216 declares unlawful an employer's refusal to pay
23 wages due and payable and/or denial of the validity of any claim to wages due. Plaintiff is
24 informed and believes, and based thereon alleges, that Defendant knew or should have
25 known that they had a duty to compensate Plaintiff and the other aggrieved employees
26 pursuant to California law, and that Defendant had the financial ability to pay such
27 compensation, but willfully, knowingly, and intentionally failed to do so, and falsely
28 represented to Plaintiff and the other aggrieved employees that they were properly denied

9

1 | wages.

2 | 26.     Labor Code section 201 requires employers to pay all wages earned and unpaid at
3 | the time of discharge, immediately upon discharge. Labor Code section 202 states similar
4 | provisions with respect to employees who resign. For all aggrieved employees no longer
5 | employed by Defendant, Defendant still has not paid such aggrieved employees all wages earned
6 | and unpaid at the time of discharge, in that Defendant has not paid for, all minimum and overtime
7 | wages and all meal and rest period premiums. These violations subject Defendant to civil
8 | penalties under the Labor Code, including without limitation Labor Code sections 203, 256 and
9 | 2699. Each violation results in a separate civil penalty, for each aggrieved employee for each pay
10 | period during which the statutory provisions were violated.

11 | 27.     Plaintiff complied with the procedures for bringing suit specified in Labor Code
12 | sections 2699.3 and 2699.5. Plaintiff gave written notice to the California Labor and
13 | Workforce Development Agency ("LWDA") via electronic mail at PAGAfilings@dir.ca.gov
14 | on January 24, 2019, and via certified mail to Defendant on January 24, 2019, of the specific
15 | provisions of the Labor Code and Wage Orders allegedly violated, including the facts and
16 | theories to support the alleged violations.

17 | 28.     Under Labor Code section 2699.3, the LWDA must give written notice by
18 | certified mail to the parties it intends to investigate the alleged violations within 65 days of the
19 | date of the Plaintiff's written notice. As of the date of this Complaint, the LWDA has not
20 | provided the parties any notice of its intention to investigate Plaintiff's claims on behalf of
21 | himself and other similarly aggrieved employees. Moreover, as of the date of this Complaint,
22 | Defendant has not responded to Plaintiff's PAGA notice in an attempt to cure. Accordingly,
23 | Plaintiff has exhausted all administrative remedies required by law.

24 | PRAYER

25 | WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally,
26 | as follows:

27 | 1.     For civil penalties according to proof;

28 | 2     For reasonable attorney's fees and costs of suit; and

10

---

REPRESENTATIVE ACTION COMPLAINT

1         3.     For such other and further relief as the Court deems just and proper.

2

3    Dated:  May 26, 2020                              CROSNER LEGAL, P.C.

4

5

6                                               Michael Crosner
                                         Zachary Crosner

7                                             J. Kirk Donnelly
                                       Attorneys for Plaintiff

8                                             CHRISTOPHER BOGLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

---

REPRESENTATIVE ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff CHRISTOPHER BOGLE demands a trial by jury on all claims so triable.

3

Dated:  May 26, 2020                          CROSNER LEGAL, P.C.

4

5

6                                                                      Michael Crosner

7                                                                      Zachary Crosner
                                                                       J. Kirk Donnelly
8                                                                      Attorneys for Plaintiff
                                                                       CHRISTOPHER BOGLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12