UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:21-cv-08878-MCS-KS | Date April 8, 2022 |
| Title *Christopher Bogle v. Wonolo Inc.* | |

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER GRANTING MOTIONS TO COMPEL ARBITRATION (ECF NOS. 19, 25) AND SUSPENDING BRIEFING AND HEARING ON MOTION FOR CONDITIONAL CERTIFICATION (ECF NO. 33)

Defendant Wonolo Inc. ("Wonolo") moves to compel Plaintiff Christopher Bogle and Opt-In Plaintiff Cedric Ogamba to arbitrate their claims against it. (Bogle Mot., ECF No. 19-1; Ogamba Mot., ECF No. 25-1.) Bogle and Ogamba opposed the motions, (Bogle Opp'n, ECF No. 24; Ogamba Opp'n, ECF No. 30), and Wonolo replied to both oppositions, (Bogle Reply, ECF No. 27; Ogamba Reply, ECF No. 31). The Court deems the motions appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

I. **BACKGROUND**

Wonolo is in the business of placing people who use its web application to work as independent contractors for employers in various industries. (Compl. ¶ 11, ECF No. 1.) Bogle claims that, in the three years prior to the suit, Wonolo improperly categorized workers it placed with third-party employers as independent contractors and refused to pay them overtime wages. (*Id.* ¶¶ 12–14.) He admits that he "was required to agree to Wonolo's terms of service in order to receive job placements."

(*Id.* ¶ 15.) Bogle asserts that, by virtue of the extensive control Wonolo exerts over workers it places, the workers should be classified as employees rather than independent contractors (and therefore should be entitled to overtime wages). (*Id.* ¶¶ 16–22.)

Bogle brings this collective action on behalf of himself and similarly situated individuals whom Wonolo utilized as temporary workers, collectively defined as the "FLSA Collective." (*Id.* ¶¶ 23–25.) He claims that Wonolo improperly classified the workers, improperly underpaid them, was aware of the workers' improper working conditions, and willfully failed to preserve records of the hours worked by the FLSA Collective members. (*Id.* ¶¶ 26–35.) The Complaint alleges one cause of action: failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"). (*Id.* ¶¶ 1, 37–48.)

Wonolo's Terms of Use Independent Contractor Services Agreement ("TOU," Perez Decl. Ex. A, ECF No. 19-3) contains an arbitration provision and a class action waiver.[1] The arbitration provisions state:

> **9.1 Law. Except for the "Mandatory Binding Individual Arbitration And Class Action Waiver" below, which is governed by the Federal Arbitration Act**, this Agreement or any claim, cause of action or dispute ("Claim") arising out of or related to this Agreement shall be governed by the laws of the state of in which the Wonoloer resides regardless of your country of origin or where you access Wonolo, and notwithstanding any conflicts of law principles.
>
> **9.2 Mandatory Binding Individual Arbitration and Class Action Waiver** ("Arbitration Agreement"). The Company and Contractor mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court. This Arbitration Agreement is governed by the

---

[1] The Court may examine evidence outside the pleadings on a motion to compel arbitration. *See Regents of Univ. of Cal. v. Japan Sci. & Tech. Agency*, No. CV 14-04419 MMM (CWx), 2014 U.S. Dist. LEXIS 199896, at *7 n.24 (C.D. Cal. Oct. 16, 2014) (collecting cases).

> Federal Arbitration Act (9 U.S.C. §§ 1-16) and, except as otherwise provided in this Arbitration Agreement, shall apply to any and all claims arising out of or relating to this Contract, the Contractor's classification as an independent contractor, Contractor's provision of services to the Company or its Customers, the payments received by Contractor for providing services to the Company or its Customers, the termination of this Contract, and all other aspects of the Contractor's relationship with the Company, past, present or future, whether arising under federal, state or local statutory and/or common law . . . . This Arbitration Agreement applies to claims and disputes that the Company may have against Contractor and/or that Contractor may have against the Company, and (1) its affiliates and partners (2) its officers, directors, employees, or agents in their capacity as such or otherwise, and/or (3) all successors and assigns of any of them; any and all of which may enforce this Arbitration Agreement.
>
> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or alleged waiver of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable. However, as stated in the "Class Action Waiver" below, the preceding sentence shall not apply to the clause entitled "Class Action Waiver."

(*Id.* §§ 9.1–.2.)

## II. LEGAL STANDARD

"With limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). "The FAA states that '[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id*. (alteration and ellipses in original) (quoting 9 U.S.C. § 2). A party moving to compel arbitration must show: "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). But even these gateway issues can be submitted to an arbitrator where there is clear and unmistakable evidence that the parties intended that result. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

If a valid arbitration agreement exists covering the dispute, the district court must compel arbitration. *Lifescan, Inc., v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). However, every arbitration agreement is still subject to generally applicable contract defenses. *See Gutierrez v. Wells Fargo, NA*, 704 F.3d 712, 719 (9th Cir. 2012).

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). A party opposing a petition for arbitration bears the burden of proving any fact necessary to its defense by a preponderance of the evidence. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010).

### III. DISCUSSION

#### A. Bogle Motion

Bogle does not contest that there is a valid arbitration agreement or that the agreement covers the dispute. (*See* Bogle Opp'n 3, 12–14.) Instead, he alleges that he did not understand that he agreed to arbitrate arbitrability and his substantive claims. (*Id.* at 12–14.)

The record belies Bogle's arguments. Bogle concedes that he agreed to the TOU. (Compl. ¶ 15.) He admits in his brief that he scrolled through and read the text of the agreement. (Bogle Opp'n 3.) He has not contested Wonolo's evidence that, in June 2021, he initiated a demand for arbitration against Wonolo pursuant to the TOU's arbitration clause he now claims he did not understand at the time he signed it. (*See* Perez Decl. Ex. B, ECF No. 19-3.) His claim that he "did not understand that he was agreeing to arbitrate arbitrability" is unavailing. (*Id.* at 14.) The general rule in California is that "one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (internal quotation marks omitted). Bogle agreed to delegate questions of arbitrability to an arbitrator, even if he did not understand the effect of the agreement. (TOU § 9.2.) Because Bogle agreed to delegate questions of arbitrability to an arbitrator, the Court lacks power to decide the gateway issues he raises. *Henry Schein*, 139 S. Ct. at 528. Wonolo's motion to compel Bogle's claims to arbitration is **GRANTED**.

#### B. Ogamba Motion

Ogamba contests the motion to compel his claims to arbitration on the basis that he did not agree to arbitrate his FLSA claims or the issue of arbitrability. (Ogamba Opp'n 11–12.) He argues that he did not understand what "justiciable" and other terms and language meant with respect to the scope of the agreement's coverage, that the arbitration provision is "buried in the middle of [a] 7,300 word document that is intended to be read on a small phone screen," that he does not remember seeing the arbitration provision, and that the TOU is an adhesion contract under California law. (*Id.* at 12–15.)

Ogamba's arguments lack merit. Ogamba does not dispute that he read and agreed to the TOU, even if he did not understand what it meant. (*See* Ogamba Opp'n 2; *see also* Gao Decl. ¶ 12, ECF No. 25-2 (indicating Ogamba agreed to the TOU on March

3, 2018).) The language in the TOU's delegation clause clearly and unmistakably delegates the question of arbitrability to the arbitrator. (TOU § 9.2.) This language is analogous to language the Ninth Circuit has deemed an unmistakable indication of intent to arbitrate arbitrability. *See Mohamed*, 848 F.3d at 1208–09 (holding that language delegating to the arbitrators the authority to decide issues relating to the "enforceability, revocability or validity" of the arbitration provision evidenced clear and unmistakable intent to let the arbitrators decide the threshold question of arbitrability). Courts routinely enforce arbitration agreements that reference "justiciable disputes." *See, e.g.*, *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 895, 904 (N.D. Cal. 2018) (enforcing an arbitration agreement covering "any justiciable disputes" between the contractor-plaintiff and the defendant). Although Ogamba claims the TOU is a "contract of adhesion"—perhaps a reference to a contract defense—his challenge is not specific to the enforceability of the delegation clause. (Ogamba Opp'n 13–14.) The Court lacks authority to adjudicate Ogamba's challenge. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless Jackson challenged the delegation provision specifically, we must treat it as valid under [9 U.S.C.] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). Wonolo's motion to compel Ogamba's claims to arbitration is **GRANTED**.

### C. Remaining Issues

Bogle and Ogamba both spend significant space in their oppositions asserting that, regardless of whether the motions to compel arbitration are granted, the Court should issue notice to Wonolo's California workers. (*See* Ogamba Opp'n 1, 3–4, 6–9; Bogle Opp'n 1–2, 4, 6–10.) The opposition briefs are not appropriate vehicles for this request. *See* C.D. Cal. R. 6-1 ("[E]very motion shall be presented by written notice of motion."); *Smith v. Premiere Valet Servs.*, No. 2:19-cv-09888-CJC-MAA, 2020 U.S. Dist. LEXIS 228465, at *42 (C.D. Cal. Aug. 4, 2020) (collecting cases for the proposition that "a request for affirmative relief is not proper when raised for the first time in an opposition").

Wonolo asks the Court to strike the collective action allegations from the Complaint. (Bogle Mot. 14.) Wonolo offers no authority permitting the Court to do so. Assuming Wonolo brings its motion under Rule 12(f), the Court will not strike the collective action allegations as "redundant, immaterial, impertinent, or scandalous" given that two opt-in plaintiffs, Camilla Walton and Miguel Hernandez, remain in the case and may assert their right to bring a collective action. *See Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019)

("[M]otions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." (internal quotation marks omitted)); *see also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018) ("[E]very plaintiff who opts in to a collective action has party status . . . . From that point on, there is no statutory distinction between the roles or nomenclature assigned to the original and opt-in plaintiffs." (internal quotation marks omitted)).

After the Court took these motions under submission, Wonolo filed a motion to compel Walton and Hernandez to arbitrate their claims. (Walton & Hernandez Mot., ECF No. 36.) Because these two opt-in plaintiffs are the only remaining plaintiffs in this suit, the Court vacates the hearing and suspends briefing on the pending motion for notice to issue under FLSA (ECF No. 33). The Court properly may decide whether an individual's FLSA claims are subject to arbitration before deciding whether conditional certification is appropriate. *See Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 376 (5th Cir. 2016) ("[U]pon being presented with IBC's motion to compel arbitration, the district court was required to address the arbitrability of Reyna's claim at the outset of the proceedings, prior to considering conditional certification."). Whether named and opt-in plaintiffs must arbitrate their claims "should be decided well before the nationwide notification issue is reached." *Id.* at 377 (internal quotation marks omitted).

## IV. CONCLUSION

The motions to compel Bogle and Ogamba to arbitrate their claims are granted. The Court orders Bogle and Ogamba to submit their claims against Wonolo to arbitration within 30 days pursuant to the terms of the arbitration agreements. *See* 9 U.S.C. § 4. Bogle and Ogamba's claims are stayed pending arbitration. *Id.* § 3.

The arbitrating parties shall file joint status reports within 120 days, and further reports every 120 days thereafter. Each report must state on the cover page the date the next report is due. Additionally, the parties must notify the Court within seven days of the conclusion of arbitration proceedings.

The Court vacates the April 25, 2022 hearing on the motion for notice to issue under FLSA and suspends briefing on the motion. The Court may reset briefing deadlines and a hearing on the motion, if appropriate, after considering Wonolo's motion to compel the remaining opt-in plaintiffs to arbitrate their claims.

**IT IS SO ORDERED.**